STATE of Missouri, Respondent,

v.

Paul E. WILLIAMS, Appellant.

No. SC 85355.

Supreme Court of Missouri,
En Banc.

Jan. 13, 2004.

As Modified on Denial of Rehearing
Feb. 24, 2004.

James R. Wyrsch, Charles M. Rogers, J. Justin Johnston, Wyrsch, Hobbs & Mirakian, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Assistant Attorney General, Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, for Respondent.

MICHAEL A. WOLFF, Judge.

This appeal raises issues of the requisite mental state for charging armed criminal action.

Following his conviction on one count each of second-degree assault and armed criminal action, Paul Williams challenges the sufficiency of the amended information, claiming that the assault charge failed to allege that he engaged in a substantial step toward the commission of the assault and that the armed criminal action charge omitted the mental culpability requirement. He contends that the evidence was insufficient on the armed criminal action count because there was no allegation or evidence that he used his vehicle with the intent to cause death or serious physical harm to the victim. Williams also claims that the State violated the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose exculpatory evidence.

Following opinion by the Court of Appeals, Western District, this Court granted transfer. *Mo. Const.* art. V, sec. 10.

This Court concludes: (1) Williams was effectively charged with assault in the second degree and armed criminal action; while the amended information should have included the *mens rea* requirement of "knowingly" or "purposely" in charging Williams with armed criminal action, Williams failed to demonstrate that he was prejudiced by the deficiency. (2) Williams used his car as a "dangerous instrument" as defined in section 556.061(9).[1] (3) The circuit court did not err in denying

---

1. All statutory citations are to RSMo 2000 unless otherwise indicated.

Williams' claim that the State violated *Brady*.

The judgment is affirmed.

**Facts and Procedural Background**

Two Kansas City, Missouri, police officers responded to a disturbance call to a residence in Kansas City made at Marva Mosley's request. The police saw Paul Williams run out the front door· of the residence and get into a car and then saw Mosley run into the street and wave her arms at the officers. Mosley stood in front of · Williams' car, and Williams drove toward her, striking her and causing her to be thrown onto the hood of the car. She rolled off the hood on the passenger side and fell to the ground, rolling approximately two times. The officers pursued Williams for a few blocks and arrested him.

Mosley told the police officers that she and Williams had an argument that evening and Williams had kicked her door open, struck her in the mouth with a closed fist, intentionally ran into her car with his car, and tried to run her over with his car. In a signed statement, Mosley said: "Paul drove the car into the street and ran into me. I landed on top of the hood and he just kept on going." Mosley obtained an order of protection against Williams. About one to two weeks later, Mosley told an assistant county prosecutor that she was recanting her statements to the police. Mosley later gave an affidavit to Williams' attorney recanting her statements to the police.

The · Jackson County prosecutor's amended information charged Williams as a prior, persistent, and dangerous offender with one count of second-degree assault, one count of third-degree assault, and one count of armed criminal action for attempting to injure Mosley with the car. In a bench trial on these charges, Mosley testified for the defense that she had lied to the police because she was angry with Williams and "wanted to get him into trouble." The circuit court found Williams guilty of second-degree assault and armed criminal action. The circuit court denied Williams' post-trial motions and sentenced Williams as a prior, persistent, and dangerous offender to seven years in prison for assault and five years in prison for armed criminal action, to .run concurrently.

**Williams Was Not Prejudiced by Deficiencies in the Amended Information**

Williams challenges the sufficiency of the amended information on count one, assault in the second degree, and on count three, armed criminal action.

Rule 23.01(b)(2) instructs that a charging indictment. or information must "[s]tate plainly, concisely, and definitely the essential facts constituting the elements of the offense charged[.]" The test for the sufficiency of an indictment or information is whether it contains the essential elements of the offense charged as set out in the statute or statutes that define the offense. *State v. Briscoe*, 847 S.W.2d 792, 794 (Mo. banc 1993).

■ Failure to allege an essential element in the information does not automatically require reversal. Because Williams did not contest the sufficiency of the amended information until after his conviction, he is only entitled to narrow review. An information or indictment will be deemed insufficient, where the issue is raised for the first time after a verdict or judgment, "only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced." *State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992).

A defendant is only entitled to relief based on a post-trial claim that the information is insufficient if the defendant demonstrates actual prejudice. A defendant suffers actual prejudice if the information or indictment was either so deficient that the defendant was not placed on notice as to what crime he or she was being charged with or was so lacking in clarity that the defendant was unable properly to prepare a defense. *State v. Baker,* 103 S.W.3d 711, 722 (Mo. banc 2003).

**The Assault Charge**

Williams claims that the amended information was insufficient because it did not allege that he engaged in a "substantial step" toward the commission of the assault and it failed to identify the facts constituting the substantial step toward commission of the underlying offense. He claims that this alleged defect impaired his ability to prepare a defense.

A person commits the crime of second-degree assault if he or she "[a]ttempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument." Section 565.060.1(2). Count one of the amended information charging Williams with second-degree assault stated that "the defendant attempted to cause physical injury to Marva Mosley by means of a dangerous instrument, to wit: a car."

Section 564.011 governs all attempt crimes, and a substantial step is an essential element of any attempt under Missouri law, including attempt-based assault as defined by section 565.060.1(2). *State v. Withrow,* 8 S.W.3d 75, 78 (Mo. banc 1999). Section 564.011 says: "A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense." The statute defines "substantial step" as "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 564.011.1. After *Withrow,* the pattern charge for second-degree assault was amended, effective September 1, 2001, to require that a charge include a description of the conduct constituting the substantial step.

Rule 23.01(b) states that if an indictment or information is substantially consistent with the forms of indictments or informations approved by this Court, it is deemed to comply with the requirements of Rule 23.01(b). Williams' second-degree assault charge followed, word-for-word, MACH–CR 19.04, the pattern charge in effect at the time Williams was charged and tried. Because the amendment to the pattern charge was not effective until after Williams was charged and tried, Williams was properly charged with second-degree assault in the amended information.

*Parkhurst* requires that Williams demonstrate actual prejudice to be entitled to relief. 845 S.W.2d at 35. A defendant who claims a charging instrument is insufficient because it does not include an essential element of the crime charged does not demonstrate actual prejudice where he fails to identify an aspect of his defense that was hindered due to the variance of the information from the statute. *State v. Pride,* 1 S.W.3d 494, 503 (Mo.App.1999). Williams claims that he "could not know the allegations or evidence, precisely, against which he should be prepared to defend."

The conduct that constituted the substantial step was Williams driving into Mosley with his car. At trial, Williams' defense was that Mosley jumped on the hood of his car. Williams neglects to explain in this appeal how the failure to

include a description of the substantial step in the amended information hindered his ability to make this defense; he does not suggest an alternative defense he would have offered. *See Baker*, 103 S.W.3d at 722.

Because the second-degree assault charge mirrored the pattern charge in effect at the time Williams was charged and tried and Williams fails to demonstrate actual prejudice, Williams is not entitled to relief.

■■■■ Williams also claims that the absence of a description of the substantial step in the charge hindered his ability to plead former jeopardy, although he does not specify how. The Court looks at the proceedings as a whole, along with the information, when analyzing a double jeopardy claim. *State v. McCullum*, 63 S.W.3d 242, 250 (Mo.App.2001). An alleged defect in a charging instrument does not preclude a defendant from later arguing double jeopardy when "it is abundantly clear from the facts and the record exactly what activity was alleged to constitute [the crime] and exactly what section of the law was alleged to be violated[.]" *Pride*, 1 S.W.3d at 503. Here, the information clearly charges Williams with violating section 565.060, committing the class C felony of assault in the second degree, by attempting to "cause physical injury to Marva Mosley by means of a dangerous instrument, to wit: a car." The amended information and the record are sufficient to allow Williams to plead former jeopardy.

### The Armed Criminal Action Charge

Williams claims that the armed criminal action charge in the amended information was defective because it did not allege that he acted with the culpable mental state required for armed criminal action and did not apprise Williams of the facts constituting the charge. Section 571.015.1 states that "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action[.]"

■■■■ The armed criminal action count, after incorporating the assault information by reference, simply alleged that "the defendant committed the foregoing felony of Assault by, with and through the use, assistance and aid of a dangerous instrument."

Williams correctly contends that the information should have alleged that he "knowingly" committed second-degree assault by, with, or through the use, assistance, and aid of a dangerous instrument. According to section 562.021.3, where the definition of an offense "does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly[.]"

■■■■ Because the definition of armed criminal action does not expressly state a culpable mental state and a culpable mental state is required, armed criminal action requires a culpable mental state of acting purposely or knowingly. Section 562.021.3. *State v. Cruz*, 71 S.W.3d 612 (Mo.App.2001), held that the prescribed mental state for armed criminal action is the same as that for the underlying felony. *Cruz* should no longer be followed.

■■■■ In examining whether Williams was prejudiced by the omission, the Court must determine (1) whether the information was so deficient that it did not place Williams on notice of what he was being charged with, and (2) whether the information was so lacking in clarity that Williams was unable to properly prepare a defense

and plead double jeopardy in the event of acquittal. *Parkhurst*, 845 S.W.2d at 35.

The information in *Parkhurst*, as in this case, left out an element of the offense, "knowingly." This Court concluded that because the information cited the correct statute and otherwise alleged the specifics of the offense, the omission of the word "knowingly" did not adversely affect the preparation of the defense or prevent the defendant from asserting double jeopardy. *Id.* Similarly, in *Briscoe*, this Court upheld the defendant's convictions for the sale of cocaine, even though the information was insufficient because it failed to allege that the sales were made "knowingly," because the defendant failed to demonstrate actual prejudice. 847 S.W.2d at 792.

 The amended information charging Williams with armed criminal action clearly stated the section of law alleged to be violated. It also stated the activity alleged to constitute the offense by incorporating the allegation in the assault charge that Williams attempted to cause physical injury to Mosley by means of a dangerous instrument, a car, and by stating that Williams "committed the foregoing felony of Assault by, with and through, the use, assistance and aid of a dangerous instrument." The language in the information was sufficient to advise Williams of the conduct by which the offense was allegedly committed, and Williams waived any complaint about the sufficiency of the facts in the information by failing to file a motion for a bill of particulars requesting additional facts about the offense. Rule 24.04; *State v. Armentrout*, 8 S.W.3d 99, 109 (Mo. banc 1999).

Williams argues that the omission of the culpable mental state prejudiced his ability to prepare a defense in that he was unable to make an informed decision as to whether he should testify. However, he fails to explain how the inclusion of the culpable

mental state would have affected his decision to testify. Williams' defense was that he did not run into Mosley with his car; rather, she jumped on his car. This Court has held that where the mental state is omitted from the information, "when [the defendant's] defense is that he did not do the act, his mental state is irrelevant." *State v. Madison*, 997 S.W.2d 16, 20 (Mo. banc 1999). While the information should have included the element of the offense of "knowingly" or "purposely," Williams was not prejudiced by the omission.

Williams was effectively charged with assault in the second degree and armed criminal action. Both charges were based on Williams' act of driving his automobile into Mosley and knocking her onto the hood of his vehicle as he sped away from police. The omission in the armed criminal action charge did not render the count so defective that it did not, by any reasonable construction, charge Williams with armed criminal action. Nor did it affect Williams' substantial rights to such an extent that it prevented him from preparing a defense or pleading double jeopardy in the event of an acquittal.

## Williams Used His Vehicle as a Dangerous Instrument

 Williams claims the information did not allege and the evidence did not prove that he employed his vehicle as a "dangerous instrument" because there was no allegation or proof that he used his vehicle with the intent or motive of causing death or serious physical injury to Mosley.

As stated, section 562.021.3 requires an armed criminal action charge to contain the culpable mental state of acting purposely or knowingly. The armed criminal action charge requires that a defendant knowingly or purposely used a dangerous instrument in a manner likely to cause death or serious physical injury. The

state is not required to prove that the defendant had the subjective intent to cause death or serious physical injury.

■ A deadly weapon, such as a gun, is inherently dangerous. Its use in a crime can be charged as "armed criminal action." Other objects—a car, for instance, in this case—become dangerous only when used in circumstances where they are readily capable of causing death or serious injury. Their use in such circumstances, in crimes, also can be charged as "armed criminal action."

"Dangerous instrument" is defined in section 556.061(9) as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." "Serious physical injury" means "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Section 556.061(28).

■ Unlike a deadly weapon, a dangerous instrument is not designed for use as a weapon and may have a normal function under ordinary circumstances. *State v. Burch*, 939 S.W.2d 525, 530 (Mo.App.1997). In contrast, section 556.061(10) defines "deadly weapon" as "any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury, may be discharged, or a switchblade knife, dagger, billy, blackjack or metal knuckles."

Missouri courts have repeatedly held that a seemingly innocuous item may constitute a dangerous instrument by considering the circumstances under which the object is used. In these cases, the standard for determining whether an ordinary object constituted a dangerous instrument turned on whether the defendant knowingly used the object in a manner in which it was readily capable of causing death or serious physical injury.[2]

Williams relies on three court of appeals cases, *State v. Pogue*, 851 S.W.2d 702 (Mo. App.1993); *State v. Idlebird*, 896 S.W.2d 656, 663 (Mo.App.1995); and *State v. Dowdy*, 60 S.W.3d 639, 644 (Mo.App.2001), to argue that the information and evidence were insufficient because there is no charge or evidence that he intended to use the vehicle to cause death or serious physical injury to Mosley. His argument is based on the *Pogue* court's conclusion that: "A utilitarian instrument becomes a dangerous instrument when circumstances in which it is used demonstrate an intent and motive to cause death or serious harm to a person." 851 S.W.2d at 706. *Pogue* was followed by *Idlebird* and *Dowdy*.

The statutory definition of "dangerous instrument" in section 556.061(9), requires only that the defendant knows he is using the instrument under circumstances that are "readily capable of causing death or serious physical injury" and does not require that the defendant have the subjective intent to use the object with an intent to cause death or serious physical injury. While the Southern District appears to

---

2. A variety of objects have been found to be dangerous instruments under the circumstances in which they were used. Without necessarily endorsing their conclusions, these cases include: *State v. Goodman*, 496 S.W.2d 850, 851 (Mo. banc 1973) (champagne bottle); *State v. Carpenter*, 72 S.W.3d 281, 284 (Mo. App.2002) (handcuffs); *Burch*, 939 S.W.2d at 530 (elbow); *State v. Tankins*, 865 S.W.2d 848, 851–52 (Mo.App.1993) (butter knife); *State v. Terrell*, 751 S.W.2d 394, 396 (Mo.App. 1988) (beer bottle); *State v. Seagraves*, 700 S.W.2d 95 (Mo.App.1985) (metal bar approximately 13 inches long and 1 inch in diameter); *State v. Davis*, 611 S.W.2d 384, 386–87 (Mo.App.1981) (metal sign nailed to a wooden board attached to a wooden stake).

introduce an additional element of subjective intent, the statute requires only a determination that the defendant knowingly used the instrument under circumstances capable of causing death or serious physical injury.

*Pogue* appears to add an element of proof—subjective intent to injure—for the prosecution that is not in the statute. To the extent that *Pogue, Idlebird,* and *Dowdy* would require a showing that the defendant had a subjective intent to cause death or serious physical injury, they should not be followed.

This Court holds that the armed criminal action charge requires that a defendant knowingly or purposely used a dangerous instrument. A dangerous instrument is "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." Section 556.061(9). The state is not required to prove that the defendant intended to cause death or serious physical injury.

The evidence supported the allegation that Williams knowingly employed his car as a dangerous instrument by using his vehicle under circumstances in which the car was readily capable of causing death or serious physical injury.

## Williams Is Not Entitled to a New Trial Based on a *Brady* Violation

Williams claims that the trial court erred in failing to grant him a new trial after the State failed to disclose that Mosley told an assistant prosecuting attorney that she lied to police concerning the events for which Williams was charged. Williams argues that the prosecution's failure to disclose this material, exculpatory evidence violated *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Under *Brady,* the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* A *Brady* violation occurs if the evidence is favorable to the accused because it is exculpatory or impeaching; the state suppressed the evidence either willfully or inadvertently; and the suppression prejudiced the defendant. *State v. Goodwin,* 43 S.W.3d 805, 812 (Mo. banc 2001).

Williams admits that the prosecuting attorney's office told his trial counsel that Mosley recanted her statements to the police and refused to testify for the State. At a post-trial hearing on Williams' motion to arrest judgment, Mosley testified that she specifically told Williams' trial counsel that she had spoken with an assistant prosecutor. A different assistant prosecutor said that she personally told Williams' attorney that "almost immediately from the start of this case Ms. Mosley has been telling us that she lied to the police."

Because the trial court had ample evidence to believe that the prosecution informed defense counsel that Mosley had recanted her statement, the trial court did not abuse its discretion in failing to grant a new trial.

## Conclusion

Williams was effectively charged with second-degree assault and armed criminal action. At the time Williams was tried and charged, the pattern charge for assault in the second degree did not require a description of the conduct constituting the substantial step. While this Court finds that under section 562.021, an armed criminal action charge requires the mental culpability of "knowingly" or "purposely," Williams was not prejudiced by the omission. Williams used his vehicle as a "dangerous instrument" as defined in section

556.061(9). Williams is not entitled to a new trial based on his *Brady* claim.

The judgment is affirmed.

All concur.