

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
　　　　　　　　　　　　　　　)
　　　　　　Plaintiff-Respondent, )
　　　　　　　　　　　　　　　)
v. 　　　　　　　　　　　　　　) 　　No. SD37718
　　　　　　　　　　　　　　　) 　　Filed: **August 7, 2023**
ALPHONSE D. AVILA, 　　　　　)
　　　　　　　　　　　　　　　)
　　　　　　Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett, Circuit Judge

**AFFIRMED**

Alphonse Avila ("Avila") appeals the judgment of the Circuit Court of Butler County

("trial court") convicting him, after a jury trial, of felony distribution of a controlled substance in

a protected location (Count I) and felony delivery of a controlled substance (Count II). *See*

Sections 579.030; 579.020.[1]

Avila raises three points on appeal, all claiming the trial court erred in denying his motion

for judgment of acquittal at the close of all the evidence due to insufficient evidence. In Point I,

he asserts the evidence was insufficient to prove he knowingly distributed a controlled substance

---

[1] Unless otherwise noted, all statutory references are to RSMo 2016, including, as applicable, statutory changes
effective January 1, 2017.

within 2,000 feet of a school. In Points II and III, he asserts the evidence was insufficient to prove both Counts I and II because the State failed to meet its burden of showing he was not entrapped as to both Counts. He requests reversal of his convictions and that he be ordered discharged from the Department of Corrections. The judgment is affirmed.

**Factual Background and Procedural History**

Avila's points challenge the sufficiency of the evidence to support his convictions. "On appeal, we view the evidence in the light most favorable to the verdict and grant the State all reasonable inferences that can be drawn from that evidence." *State v. Hilleman*, 634 S.W.3d 709, 711 (Mo.App. 2021). Viewed from this perspective, the following evidence was adduced at trial.

A confidential informant (the "CI") introduced Avila to Travis Templemire ("Templemire"), an undercover narcotics investigator with the Missouri State Highway Patrol. On January 14, 2019, Templemire called Avila and asked to buy methamphetamine. Avila offered to sell Templemire about 3.5 grams of methamphetamine for $120. A "little while" after the call, Avila sent Templemire a text message telling Templemire to meet at Avila's home to complete the transaction. Templemire and the CI arrived at Avila's home and they waited for the dealer to arrive. Eventually, Avila, Templemire, and the CI determined they would meet the dealer in a movie theater parking lot. The group drove to the movie theater in the CI's vehicle but the dealer was not there. Avila then suggested they acquire one gram of methamphetamine from another dealer and drove to a home on 12th Street between Pershing and Davis Streets in Poplar Bluff. Avila entered the home as Templemire and the CI circled the block in the CI's vehicle. Templemire picked up Avila "walking on [12th] Street between . . . Davis and Pershing." Right after that, Avila gave Templemire one gram of methamphetamine and told him

2

it would cost $60. Templemire gave Avila $70, $60 for the methamphetamine and $10 as a "standard fee" to Avila for facilitating the transaction and so Templemire could "keep all of the product" instead of Avila keeping some of the product as part of his "standard fee."

Templemire testified Avila, Templemire, and the CI were on 12th Street between Davis and Pershing Streets when the January 14, 2019 drug transaction occurred. He testified the drug transaction occurred "much less" than 2,000 feet from the Poplar Bluff Middle School (the "middle school"). Templemire further testified that, even giving the benefit of all doubt to Avila and assuming the drug transaction occurred at the furthest point on 12th Street from the middle school, the drug transaction occurred at most 1,996 feet from the middle school. Templemire testified to his preparation of two exhibits, State's Exhibits 3A and 3B, which were admitted without objection. Templemire testified Exhibit 3A is a Google Earth image showing the intersection of Davis and 12th Streets with a circle showing 2,000 feet in every direction from the intersection, with the 2,000 feet circle encompassing "a lot of the middle school" and a radius line depicting the furthest point of the intersection to the middle school, with a computed distance of 1,996 feet from that furthest point to the middle school. He showed the jury where on State's Exhibit 3A the drug transaction took place and testified it was within the 2,000 feet circle. Templemire testified State's Exhibit 3B is the same as State's Exhibit 3A except it shows the radius line only with the 1,996 feet computation and no circle. Templemire also testified a school crossing sign was visible on Pershing Street near the middle school. He testified the sign would be visible "[w]henever you drop down the hill and get on to Pershing Street if you just look back toward the school."

Avila testified he knew the middle school was a school, but he thought the school had closed:

| [State:] | Sir, the question was did you know the school was there? |
| [Avila:] | Yes. It was a high school back in the day. |
| [State:] | Thank you. |
| [Avila:] | That school has always been there. |

After the drug transaction on January 14, 2019, police pulled over Avila, Templemire, and the CI. Avila was arrested on outstanding warrants and jailed in the Butler County Jail "for a couple of weeks."

On January 29, 2019, Templemire and the CI went to Avila's home to purchase methamphetamine. Avila and Templemire agreed to a price of $125, and Templemire gave Avila that amount in cash before the dealer arrived. After the dealer arrived and Avila retrieved the methamphetamine, Avila weighed the product, took part of the methamphetamine for himself as a "finder's fee," and gave the rest to Templemire. Testing by the Missouri State Highway Patrol confirmed the substances in the transactions on January 14 and January 29 were methamphetamine. Avila testified he is a drug addict. Avila admitted he obtained the methamphetamine and sold it to Templemire on January 14 and January 29, 2019.

Avila raised entrapment by testifying the CI contacted him twice a week for a month before January 14, and the CI contacted him multiple times on January 14 trying to set up the methamphetamine purchase. Avila testified he asked multiple times if he could go home after the group had left the house on January 14, but was told he could not go home until they acquired methamphetamine. Avila testified the CI again contacted Avila multiple times on January 29 and, despite Avila telling the CI he did not want to sell drugs, the CI and Templemire arrived at Avila's home unannounced and "badgered" Avila. Avila convinced Templemire and the CI to leave, but they later returned and Avila contacted his dealer to provide methamphetamine. Avila testified that, but for the actions of the CI and Templemire, he would not have participated in distributing or delivering controlled substances.

4

At the close of the State's evidence, Avila moved for judgment of acquittal, which the trial court denied. Avila also moved for judgment of acquittal at the close of all the evidence, which the trial court denied. The trial court submitted Avila's entrapment defense to the jury by written jury instructions for both Counts I and II. Avila does not challenge the instructions given on appeal. The jury found Avila guilty on Counts I and II. The trial court entered its judgment finding Avila to be a prior drug offender under Section 579.170 and sentenced Avila to twenty years' imprisonment on Count I and fifteen years' imprisonment on Count II, with the sentences to be served concurrently. Avila moved for a new trial, challenging the sufficiency of the evidence to convict him. The trial court denied the motion. Avila appealed.

## Standard of Review

"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Boyd*, 659 S.W.3d 914, 925 (Mo. banc 2023) (quoting *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005)). "[G]reat deference is given to the trier of fact, and an appellate court will not weigh the evidence anew." *Id.* (quoting *State v. Alexander*, 505 S.W.3d 384, 393 (Mo.App. 2016)). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.* (quoting *Belton*, 153 S.W.3d at 309).

"We defer to the fact-finder's 'superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony.'" *Hilleman*, 634 S.W.3d at 713 (quoting *State v. Lopez-McCurdy*, 266 S.W.3d 874, 876 (Mo.App. 2008)). "Circumstantial rather than direct evidence of a fact is sufficient to support a verdict." *Id.* (quoting *State v. Lehman*, 617 S.W.3d 843, 847 (Mo. banc 2021)). "If circumstantial

5

evidence supports equally valid inferences, it is up to the fact-finder to determine which inference to believe." *Id.*

## Analysis

Point I - Proximity to School

In Point I, Avila asserts the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to prove under Count I that he "was within 2000 feet of [the middle school] and that he knew that he was within 2000 feet of [the middle school]." We disagree.

Under Count I, distribution of a controlled substance in a protected location, the State had to prove Avila (1) knowingly distributed, sold, or delivered any controlled substance, except thirty-five grams or less of marijuana or synthetic cannabinoid, to a person knowing that the distribution, delivery, or sale was (2) in, on, or within two thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school. *See* Section 579.030.1(1).

The State presented sufficient evidence to prove Avila was within 2,000 feet of the middle school when Avila sold the methamphetamine to Templemire on January 14. Templemire testified the drug transaction occurred on 12th Street between Pershing and Davis Streets "much less" than 2,000 feet from the middle school. Templemire testified about his preparation of State's Exhibits 3A and 3B. Templemire testified the drug transactions occurred no more than 1,996 feet from the middle school. Avila does not challenge Templemire's preparation of State's Exhibits 3A and 3B or the computed distances reflected in the exhibits. Avila instead asserts the precise drug transaction location could not be proven because Templemire was in a moving vehicle and the transaction occurred at night. But nothing in

6

Section 579.030.1(1) requires identification of the precise location of the drug transaction. Templemire's testimony, along with State's Exhibits 3A and 3B, was sufficient to prove Avila sold the methamphetamine to Templemire at a location within 2,000 feet of a public school, as required by Section 579.030.1(1).

Likewise, the State presented sufficient evidence to prove Avila knew he was within 2,000 feet of the middle school when Avila sold the methamphetamine to Templemire on January 14. "Knowledge is typically inferred from circumstantial evidence because direct evidence is rarely available." *State v. Hunt*, 451 S.W.3d 251, 257 (Mo. banc 2014) (citing *State v. Letica*, 356 S.W.3d 157, 166 (Mo. banc 2011)). Avila's own testimony provided sufficient evidence of his knowledge when he testified he knew the middle school was there but that he "was under the impression it was closed." The jury could believe Avila's testimony that he knew the middle school was there while disbelieving his testimony that he thought the middle school had closed. *See State v. Pierce*, 433 S.W.3d 424, 432 (Mo. banc 2014) ("A jury may accept part of a witness's testimony, but disbelieve other parts.") (quoting *State v. Williams*, 313 S.W.3d 656, 660 (Mo. banc 2010)).

Avila's testimony distinguishes his case from three other cases on which he relies. In *State v. White*, 28 S.W.3d 391 (Mo.App. 2000), *vacated on other grounds* in *State v. White*, 70 S.W.3d 644 (Mo.App. 2002), the Western District of this Court held that a map depicting a school as 896 feet from the defendant's home was insufficient to prove the defendant's knowledge of the school. 28 S.W.3d at 397. In *State v. Calvert*, 290 S.W.3d 189 (Mo.App. 2009), the Western District of this Court held that, under a statutory scheme involving public housing, there was insufficient evidence to show defendant knew his home was within 1,000 feet of public housing when the public housing was not distinguishable from any other housing. *Id.*

at 192-93. In *State v. Lehman*, 617 S.W.3d 843 (Mo. banc 2021), the Supreme Court of Missouri held there was insufficient evidence to show a defendant was within 500 feet of a public park when the State presented only evidence the defendant was "near" the park. *Id.* at 847-50. Here, Avila testified he knew the location in question was a middle school, but he believed it had closed. This testimony, coupled with Templemire's testimony about the location of the drug transaction and State's Exhibits 3A and 3B, provided sufficient evidence from which the jury could find beyond a reasonable doubt that Avila knowingly sold the controlled substance of methamphetamine within 2,000 feet of a public school. Viewing the evidence and inferences in the light most favorable to the verdict, we find the State presented sufficient evidence to support Avila's conviction on Count I. Point I is denied.

## Points II & III - Entrapment

In Points II and III, Avila claims the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to prove Count I or Count II in that the State failed to prove Avila was not entrapped beyond a reasonable doubt as to each Count. We disagree.

Section 562.066.1 codifies the defense of entrapment and provides: "The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the prescribed conduct because he or she was entrapped by a law enforcement officer or a person acting in cooperation with such an officer." Section 562.066.2 states:

> An "entrapment" is perpetuated if a law enforcement officer or a person acting in cooperation with such an officer, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct when he or she was not ready and willing to engage in such conduct.

8

Section 562.066.4 states: "The defendant shall have the burden of injecting the issue of entrapment."

Missouri courts use a two-part subjective test for determining entrapment. *State v. Willis*, 662 S.W.2d 252, 254-55 (Mo. banc 1983); *State v. Munoz*, 345 S.W.3d 888, 891 (Mo.App. 2011). "To inject the issue of entrapment, a defendant must present evidence of both: (1) 'inducement to engage in unlawful conduct,' and (2) 'an absence of a willingness to engage in such conduct.'" *Munoz*, 345 S.W.3d at 891-92 (quoting *Willis*, 662 S.W.2d at 255). The defendant bears the initial burden to offer "evidence showing both unlawful governmental inducement and defendant's lack of predisposition." *Id.* "If this burden is met by the defense, then it is the State's burden to prove lack of entrapment beyond a reasonable doubt, which may be done 'by rebutting either defendant's evidence of inducement or by showing his predisposition.'" *Id.* If "the issue of entrapment has been injected into the case by the defendant and the State's case contains no evidence of entrapment, entrapment is not established as a matter of law and the fact finder is free to reject the defendant's allegations and conclude he was not unlawfully entrapped." *Id.* (quoting *Willis*, 662 S.W.2d at 257).

The jury had before it evidence from which it could find the State met its burden to prove lack of entrapment beyond a reasonable doubt as to Counts I and II through the State's evidence rebutting Avila's evidence of entrapment and/or through the State's evidence showing Avila's predisposition. Avila admitted he engaged in the drug transactions on January 14 and January 29, 2019, but he claimed he only did so because the CI repeatedly contacted him before both transactions and the CI and Templemire "badgered" him to participate. The State's evidence showed Avila took, on multiple occasions, affirmative steps to facilitate the drug transactions. He responded to messages from Templemire, coordinated meeting places and dealers, and even

9

provided an alternate dealer when the first dealer did not arrive at the movie theater. Avila had multiple opportunities to ignore the requests from Templemire and the CI or back out of the transactions, but did neither. *C.f. Munoz*, 345 S.W.3d at 892. In addition to presenting evidence rebutting Avila's evidence as set out above, the State also presented evidence showing Avila's predisposition on both Counts. "Evidence of a defendant's prior use, possession, or sale of drugs, or ability to supply drugs upon request constitutes evidence of predisposition sufficient to negate a defense of entrapment." *Id.* (quoting *State v. Adams*, 839 S.W.2d 740, 743 (Mo.App. 1992)). The State introduced evidence of Avila's prior drug conviction. Avila also admitted he "ha[d] somebody come by every now and then" to sell him methamphetamine, and that he had a prior conviction for possession of a controlled substance. The jury as the fact-finder was free to reject and did reject Avila's allegations of entrapment. Points II and III are denied.

## Conclusion

The judgment of the trial court is affirmed.


GINGER K. GOOCH, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JACK A. L. GOODMAN, C. J. – CONCURS

10